Elizabeth A. Benschoter, appellee, v. Edward H. Lalk and Edward G. Kriechbaum, appellants.

1. **Husband and Wife:** POWER OF ATTORNEY TO CONVEY PROPERTY OF WIFE. One B., a married man, being considerably in debt, obtained a power of attorney from his wife as follows: "In my name, place, and stead, to sign my name to all conveyances of real estate to which I have any right of dower, as to real estate both in the city of Chicago, Illinois, and in the town of Loup City, Sherman county, Nebraska, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever required and necessary to be done in and about the premises, etc., * * it being intended to convey hereby all my right, title, and interest in and to the above described real estate." Afterwards certain real estate of the husband, in Loup City, was transferred to the wife and conveyed by the husband under the above power, the wife having notice that transfers of such property were being made by the husband in her name. *Held*, That, in view of the testimony, the words, "it being intended to convey hereby all my right, title, and interest in and to the above described real estate," were to be construed as authority to the husband to make such conveyances.

2. ———: ———: CONSTRUCTION OF POWER. Where the evident purpose of a power of attorney is to enable the attorney in fact to control and convey lands obtained after the execution of such power, it will be so construed.

APPEAL from the district court of Sherman county. Heard below before GASLIN, J.

*Congdon, Clarkson & Hunt,* for appellants, cited: Wharton on Agency, Sec. 223. *Blackett v. Royal Ex. Assur. Co.,* 2 Cr. & J., 244. *De Tastet v. Crousillatt,* 2 Wash., C. C., 132. *Brown v. McGran,* 14 Peters, 479. *Stall v. Meek,* 70 Pa. St., 181. *Weed v. Adams,* 37 Conn., 378.

*A. H. Conner, Wall & Long,* and *G. M. Lambertson,* for appellee, cited: *Dodge v. Hopkins,* 14 Wis., 636. *Mead*

*v. Brothers,* 28 Wis., 689.  *Stoll v. Sheldon,* 13 Neb., 208.
*Mathews v. Sowle,* 12 Neb., 404.    Wharton's Com. on
Agency and Agents, Secs. 137, 132, 459.    Story on
Agency, Secs. 21, 126.    1 Parson on Contracts, 41.
Broom's Legal Maxims, 646.    *Vaughn v. Porter,* 16 Vt.,
266.  *Baxter v. State,* 9 Wis., 38–46.    *Torrance v. Mc-*
*Dougald,* 12 Ga., 526.    1 Wait's Actions and Defenses,
Sec. 15, p. 125.

MAXWELL, J.

The allegations in the amended petition are, in substance,
"that by virtue of a quitclaim deed executed and deliv-
ered to the plaintiff by the defendants, Lalk and Kriech-
baum, on July 30, 1880, she is the legal owner, but not in
the actual possession of the lots.    Defendants, Lalk and
Kriechbaum, claim an interest and estate adverse to her,
are not in the actual possession of the lots, but assume to
exercise control over them by virtue of a quitclaim deed
from one C. F. C. Moor, dated June 8, 1883.    Moor
claimed title and assumed to convey by virtue of a war-
ranty deed, dated January 24, 1881, pretended to have
been executed to him by the defendant, Martin W. Ben-
schoter, as the attorney in fact of the plaintiff; said Mar-
tin was not her attorney in fact for the purpose of convey-
ing said lots.    The deed to Moor is void.    The prayer is
that the claim of Lalk and Kriechbaum be declared null
and void, and that the title of the plaintiff be quieted."

To this petition the defendants answered as follows:
"These defendants deny that the defendant, Martin W.
Benschoter, was not, at the time of the transfer from said
plaintiff to said Moor, of said lots, the attorney in fact of
said plaintiff, and that he was not authorized as her attor-
ney to make such conveyance.    These defendants say that
said Martin W. Benschoter and said plaintiff were at all
times referred to in said petition, and are now, husband and

wife, and have lived together as husband and wife constantly since their marriage; that on the 19th day of January, 1876, said plaintiff executed and delivered to her said husband, the defendant, Martin W. Benschoter, and caused to be spread upon the records of said Sherman county, a power of attorney in the following words: 'Know all men by these presents, that I, Elizabeth A. Benschoter, of Sherman county, state of Nebraska, have made, constituted, and appointed, and by these presents do make, constitute, and appoint Martin W. Benschoter, of Sherman county, state of Nebraska, my true and lawful attorney for me and in my name, place, and stead to sign my name to all conveyances of real estate to which I have any right or dower, as to real estate both in the city of Chicago, Illinois, and in the town of Loup City, Sherman county, Nebraska, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever required and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue thereof; it being intended to convey hereby all my right, title, and interest in and to the above described real estate. In virtue whereof I have hereunto set my hand, this 19th day of January, 1876.

"'(Signed)          ELIZABETH A. BENSCHOTER.

"'STATE OF NEBRASKA, ⎫
      SHERMAN COUNTY,  ⎬ ss.
                              ⎭

"''Be it known, that on the 19th day of January, 1876, before me, A. B. Fulton, a clerk of the district court, within and for said county and state, personally came Elizabeth A. Benschoter, to me personally known to be the identical person described in and who executed the foregoing letter or power of attorney, and acknowledged the execution thereof to be her voluntary act and deed.

In testimony whercof I have hereunto set my hand and affixed my official seal the day and year last above written.

"'A. B. FULTON,

"' *Clerk of the District Court.'*

"Endorsed as follows: 'Filed for record this 22d day of April, 1876, at 9 o'clock A.M., and recorded in deed record book, page 78. A. B. Fulton, county clerk Sherman county, Nebraska.' And further, these defendants say that, under and by virtue of said power of attorney and through said defendant, Martin W. Benschoter, as her attorney in fact, said plaintiff conveyed said lots by said warranty deed, referred to in said petition, to said Moor. These defendants .say that said plaintiff was, at the time of said conveyance to said Moor, fully advised of and concerning said transfer, and has ratified the act of transfer as made by her attorney in fact, Martin W. Benschoter.

"These defendants say that they and their grantor have paid the taxes of whatsoever kind and nature upon said lots from the time of the transfer to said Moor; that said plaintiff has at all times well known that said Moor and said defendants claimed to own said lots; that their deeds were duly of record in the office of the county clerk of said Sherman county; that she permitted them to pay taxes without interposing any claim to said lots, or in any manner denying the authority of said Martin W. Benschoter until the commencement of this suit; that she permitted the said power of attorney to remain of record upon the records of said Sherman county unrevoked.

"These defendants say the claim of said plaintiff is barred by the lapse of time, and that it is contrary to equity and good conscience; that at the time of the transfer from said plaintiff to said Moor through said. power of attorney said lots were of but little value, but that the same are now valuable.

"These defendants say that prior to the execution by them to said plaintiff of a deed of conveyance to said lots,

and on the 22d day of November, 1879, one William Benschoter conveyed to them, these defendants, the north-west quarter of the north-east quarter of section 18, township 15, range 14, in said Sherman county; that contemporaneously with said conveyance these defendants executed a contract, the consideration for which was said conveyance, and therein agreed to plat said land into town lots, to sell the same, and to pay over to the defendant, Martin W. Benschoter, one-half of the proceeds; that in accordance with said contract these defendants platted and laid out said land into Lalk and Kriechbaum's second addition to Loup City; that finally, and on the 30th day of July, 1880, these defendants had a full and complete settlement with said defendant, Martin W. Benschoter, and, at his request in said settlement, conveyed the lots named in said petition, together with many others, to the wife of said Martin W. Benschoter, the plaintiff, Elizabeth A. Benschoter; that at the time of said conveyance by these defendants to said plaintiff said defendant, Martin W. Benschoter, was insolvent; that, as a matter of fact, through said conveyance said plaintiff became the trustee of said defendant, Martin W. Benschoter, and did at all times permit him to act towards and concerning said lands as he would towards his own."

There is a reply to which it is unnecessary to refer.

On the trial of the cause the court found for the plaintiff, and rendered a decree in her favor. The defendants appeal.

The evidence is correctly summarized in the appellant's abstract, and is substantially as follows: The defendant, Martin W. Benschoter, and the plaintiff, Elizabeth A. Benschoter, were married on May 3, 1875, and have ever since lived together as husband and wife. On January 19, 1876, Elizabeth, the wife, made to Martin, the husband, an ambiguous power of attorney, which was recorded in Sherman county, Nebraska, on April 22, 1876. It has never been revoked. The authority granted in the instru-

ment is expressed in these words: "To sign my name to all conveyances of real estate to which I have any right of dower, as to real estate both in the city of Chicago, Illinois, and in the town of Loup City, Sherman county, Nebraska. * * * It being intended to convey hereby all my right, title, and interest in and to the above described real estate." At the time of the execution of the power of attorney Mr. and Mrs. Benschoter lived at Loup City. Whether or not at that time Martin owned real estate in Sherman county the proof does not, show. The records ·of Sherman county disclose that, on October 6, 1874, one John O'Donnell obtained a judgment against Martin W. Benschoter for $415.43 and costs; that on February 5, 1877, one Caple obtained a judgment against him for $64.25 and costs, and that on May 29, 1878, school district No. 10 of Sherman county obtained a judgment against him for $5,366.56 and costs. These judgments have not been paid.

It appears that about the time of the obtaining of the judgments above named, although the records of Sherman county fail to disclose that Martin was the owner of any real estate, he did, as a matter of fact, claim certain interests in real estate in the county, the title to which was in his brother, William Benschoter. In settlement of matters between William and Martin, the former, on April 23, 1879, for the nominal consideration of one dollar, conveyed to Elizabeth A. Benschoter, the plaintiff in this action, and the wife of Martin, a great many lots and blocks in the original town of Loup City, and eighty acres adjoining the town. In response to the question put to Elizabeth as to the consideration passing from herself to William for this land, she says she loaned William money. Another question elicited the fact that the money loaned was the sum of $15, which she does not say that William did not pay, and which William says he had paid. William says the consideration for the conveyance to Elizabeth was a

settlement with Martin. This property described in the deed from William to Elizabeth appears to be the first of Martin's land held by Elizabeth in Sherman county. On September 20, 1879, after Elizabeth had held the property about seven months, one John Hogue agreed to buy from Martin, and fixed the price with him for the real estate conveyed by William to Elizabeth in the settlement with Martin. On that day Elizabeth, as well as Martin, was in Loup City. Martin proposed to make the deed to Hogue, and to convey for Elizabeth under the power of attorney, claiming that he had a good and sufficient power. Hogue made objection, for the reason that Elizabeth was in town and could make the deed herself. The deed was made by Elizabeth and Martin. For the lots, Hogue paid to Martin, in money, $500; for the eighty acres, Hogue paid to Martin, in money, $740; and for the balance he gave his promissory note to the order of Martin for $760, which Martin endorsed and discounted at a bank in Indiana. The title to the land was in the name of Elizabeth, yet every agreement and transaction concerning its sale was had with Martin, and the entire consideration paid to him, Elizabeth allowing him to transact the business and to receive the consideration. Lalk and Kriechbaum had become the owners of certain interests in and to the northeast quarter of said section 18. The title to the other interests in the same land was in William Benschoter. On November 22, 1879, William conveyed his interest in the last described land to Lalk and Kriechbaum. On the same day, and contemporaneously with William's deed, Lalk and Kreichbaum executed a contract in which they agreed to plat and lay out the land into town lots, as their addition to Loup City, to pay to Martin W. Benschoter the sum of $300, and also one-half of the net proceeds of sales of lots. The consideration passing to William from Lalk and Kriechbaum, and from the latter to Martin, for the deed and contract, was another settlement of matters

between William and Martin. Under the contract Lalk and Kriechbaum laid out the land into Lalk and Kriechbaum's second addition to Loup City, paid to Martin the sum of $300, and one-half of the net proceeds of sales, and finally, on July 30, 1880, at Loup City, had a full settlement with Martin, and, at his request, deeded to his wife, Elizabeth, one hundred and forty-five lots, sixty of which are in controversy in this action. At the same time Martin executed a release from the obligation of the contract, on the back thereof, to Lalk and Kriechbaum. On the very same day, July 30, 1880, Martin sold to parties named Moor and Hartley, and, under the power of attorney, conveyed to them twenty-six of the lots named in the deed from Lalk and Kriechbaum to Elizabeth. The deed to Elizabeth was placed on record at 7:10 o'clock P. M., and the deed to Moor and Hartley at 7:43 o'clock P.M. of the same day.

On January 24, 1881, Martin sold one hundred of the lots for $1,100 to Moor, and conveyed to him under the power of attorney. For the one hundred lots Moor made payment to Martin in money and notes to Martin's order. In part satisfaction of a note, Moor, on July 14, 1881, under an arrangement made with Martin, reconveyed thirty-six of the one hundred lots to Elizabeth for $400. On November 25, 1882, Martin sold and conveyed, under the power of attorney, to one Theis, for $425, the thirty-six lots reconveyed by Moor to Elizabeth. Theis paid the money to Martin. On June 8, 1883, Moor conveyed sixty-four of the one hundred lots to Lalk and Kriechbaum, for which they paid him in money $1,000. Sixty lots of the sixty-four are in controversy herein. Under the power of attorney, Martin sold and conveyed every lot that Lalk and Kriechbaum had conveyed to Elizabeth, and all the property that Elizabeth ever held in Loup City. For one hundred and twenty-six lots he received $1,625. The record does not disclose what amount he received for

the remaining nineteen lots. From the property which really belonged to Martin, that indirectly came to him from William, he received from Hogue $2,000 ; from Lalk and Kriechbaum, under the contract, $300, and one-half of the proceeds of sales; from Moor and Hartley, $500; from Moor, $1,100, less $400; from Theis, $425, and the proceeds of the sales of the remaining nineteen lots; in all, about the sum of $4,000. Of this amount, Elizabeth knew that he received $2,000 from Hogue, because she permitted him to receive it, and although she says she did not know that her husband had sold any of the lots conveyed to her by Lalk and Kriechbaum until two years prior to the commencement of this action, and not to her knowledge did she ever receive any of the consideration, yet it is apparent that she is mistaken.

It is evident that the financial condition of Martin W. Benschoter from the time of his marriage until the bringing of this action was such that had he held the property in controversy in his own name it would have been liable to be subjected by his creditors to the payment of their judgments, and that therefore it was held in the name of his wife. To enable him to control and convey it a power of attorney was made by her to him for that purpose, and she permitted him to control the property, dispose of it, and appropriate the proceeds to his own use. That she was well aware that he was selling this property, and conveying it by deeds executed in her name, may fairly be deduced from the testimony. Why the power of attorney was drawn in the ambiguous form that it is, must, in the absence of proof on that point, be left to conjecture. The most plausible theory consistent with the honest intention of the parties is, that it was drawn by the scrivener to cover the matter of dower, and that alone, he not knowing that the legal title was held by the wife, and upon reading the writing thus prepared he was informed that the wife held the legal title, when, to cover that point, the words, " it being intended to convey

hereby all my right, title, and interest in and to the above described estate," were added. These words are inaptly framed in a power of attorney, being proper in a deed of conveyance. They are not nugatory, however. They evidently were intended to confer power upon the attorney in fact to convey all her right, title, and interest in her real estate in Loup City and Chicago. The intention of the maker of the power is to be derived from the whole instrument. In the first part she authorizes her attorney in fact to execute deeds in her name where she has a mere dower interest, and in the latter part he is authorized to execute such deeds to transfer all her title or interest in lands in the places named. This was the apparent power conferred, and it should not be limited to the dower interest. In any event, this was the apparent power the plaintiff had clothed her attorney in fact with, and as conveyances were made with her knowledge, in her name, she will be bound by such conveyances. This would be the rule even if the plaintiff had been the actual owner of the land, but, in our view, she merely held the legal title, the real owner being her husband. It is a somewhat remarkable fact that the person who discovered the lack of authority of Martin W. Benschoter to make the conveyances in question was himself, and that he did not discover it until he had conveyed every foot of the land and received every dollar of the consideration therefor. This is a circumstance in the case upon which we do not care to enlarge. There is some objection that the power of attorney did not apply to property acquired after its execution. The evident purpose, however, was to have it apply to all real estate of the wife acquired by her before the revocation of such power. In such case the power is operative as to after-acquired property. *Bigelow v. Livingston*, 28 Minn., 57. *Fay v. Winchester*, 4 Metc., 513. In the light of the circumstances in this case, the power was sufficient to authorize the husband to convey lands in Loup City in the name of the

wife, and that such deeds are valid and binding against her.

The judgment of the district court is reversed and the action dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.