ALLEGHENY OIL CO. v. SNYDER et al.

GILLMOR et al. v. BROWN et al.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1900.)

Nos. 807, 808.

1. MINERALS—OIL AND GAS LEASE—CONSTRUCTION.

A lease reciting a consideration of one dollar paid by the lessee gave him the right to drill for oil or gas on the demised premises, together with such privileges as were incidental to such operations and the removal of the oil or gas produced, for the term of two years, and as long thereafter as oil or gas should be found in paying quantities, not exceeding in the whole the term of 25 years; he to pay a stipulated royalty on the production. The lease then provided that, "in case no well shall be drilled on said premises within two years from the date hereof, this lease shall become null and void, unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter." *Held*, that such lease constituted an entire contract, and that the consideration recited supported not only the grant of the two-years term, but as well the privilege of extending the time for drilling by paying the stipulated price therefor.

2. SAME—IMPLIED COVENANT TO DEVELOP THE PROPERTY.

Under the decisions of the supreme court of Ohio relating to the construction of oil and gas leases, which have established a rule of property in that state, such leases carry an implied covenant on the part of the lessee that he will drill and operate such number of wells on the premises as would ordinarily be required to develop their production and to afford ordinary protection to their lines; and the lessor may enforce such covenant by action, and is not obliged to permit the lessee to hold the land indefinitely for speculative purposes, notwithstanding the absence of any express limitation in the lease.

3. SAME—RECORD AS NOTICE—OHIO STATUTE.

Rev. St. Ohio, § 4112a, requiring all oil or gas leases and licenses to be filed for record, and providing that no such lease or license shall be of any effect or validity until so recorded, except as between the parties, or unless the party claiming thereunder shall be in actual and open possession, has been construed by the supreme court of the state to make the record of such instruments the only notice that can be available against third persons acquiring interests in the lands adverse to the lessee, unless he is in actual possession. *Held*, that a lease which by its terms gave the lessee the sole right for a term of years to drill and operate for oil and gas upon the lands described, although not witnessed as required by statute to constitute a legal lease, was yet good as a license, and entitled to record as such, and also good in equity, as an agreement to make a lease, and that when duly recorded the record was notice to third persons of all rights of the lessee thereunder. But, if such instrument be held one not entitled to record under the statute, then it was not affected thereby, and actual knowledge of its provisions would be effectual to charge a subsequent lessee with notice of the equities of the grantee therein.

4. SAME—RIGHTS OF LESSEE—EQUITABLE JURISDICTION TO PROTECT.

The Ohio statute (Rev. St. § 5779) giving a right of action to one in possession of real estate to quiet title against an adverse claimant, is not exclusive, in such sense that it precludes a lessee under an oil and gas lease, or one having an equitable right to such lease, although out of possession, from maintaining a suit in equity to protect his rights thereunder by enjoining the removal of oil or gas from the premises by another claiming under a subsequent lease, the effect of which would be to destroy his estate.

**5. FEDERAL COURTS—PROCEDURE IN EQUITY—FINAL DECREE ON PRELIMINARY MOTION.**

Where cross suits between two lessees of the same property were heard together by a federal court upon motions for preliminary injunctions, submitted on bill, answer, and affidavits in each case, and the rights of the parties depended solely on the validity and construction of the first lease, the facts being substantially undisputed, the court had power to enter final decree on such hearing.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

These cases involve a construction of certain oil leases upon the lands of one William E. Fowler, in North Township, Harrison county, Ohio, and may be considered together. On the 12th of November, 1896, Fowler made a lease of the land in question to one Hiram Snyder. This lease was acknowledged by Fowler and wife and Snyder before a notary. It had but a single witness. It was admitted to record and recorded in the lease records of Harrison county December 16, 1896, and is in the following language: "Agreement made this twelfth day of November, A. D. 1896, between William E. Fowler and Anna Fowler, his wife, of the township of North, county of Harrison, and state of Ohio, lessors, and Hiram A. Snyder, of the village of Scio, state of Ohio, lessee, witnesseth: That the lessor, in consideration of one dollar, the receipt of which is hereby acknowledged, does hereby demise and grant unto the lessee, his heirs and assigns, all the oil and gas in and under the following described tract of land, and also the said tract of land for the purpose and with the exclusive right of operating thereon for said oil and gas, together with all the rights of way, the right to lay pipe lines on and over and to use water from said premises, and also the right to remove at any time any property placed thereon by the lessee, which tract of land is situated in the township of North, county of Harrison, and state of Ohio, and is bounded and described as follows, to wit: North by lands of John W. Spiker, east by lands of the Houser estate, south by lands of Richard Downs, west by lands of Thomas Cameron; containing 114 acres, more or less. To have and to hold the same unto the lessee, his heirs and assigns, for the term of two years from the date hereof, and as long thereafter as oil or gas is found in paying quantities thereon, not exceeding in the whole the term of twenty-five years from the date hereof, yielding and paying to the lessor the one-eighth part of all the oil produced and saved from the premises, in tank or in pipe lines, to the lessor's credit; and, should any well produce gas in sufficient quantities to justify marketing, the lessor shall be paid at the rate of one hundred and fifty dollars per year for such well, as long as the gas therefrom is sold. In case no well shall be drilled on said premises within two years from the date hereof, this lease shall become null and void, unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter. Such payment may be made in hand, or by deposit to the lessor's credit in the Scio Bank. No well to be drilled within 250 feet of any of lessor's buildings. It is agreed that the lessee shall have the right at any time to surrender this lease to the lessor for cancellation, after which all payments or liabilities to accrue under and by virtue of its terms shall cease and determine, and this lease become absolutely null and void. It is understood that all the terms and conditions between the parties hereto shall extend and apply to their respective heirs, executors, administrators, and assigns." Nothing was done under this instrument by way of sinking wells or otherwise taking possession until after the expiration of the two years named in the lease. On the 10th of November, 1898, the sum to be paid in the lease for delay at the rate of one dollar per acre was paid to Fowler. On the 18th day of October, 1898, Fowler made another lease to one George Gillmor, which was duly acknowledged and recorded on the 16th day of November, 1898. This lease was subsequently assigned to the Allegheny Oil Company, and it commenced an action in the United States circuit court for the Southern district of Ohio to remove the cloud of the Snyder lease and clear its own title,

having in the meantime taken possession of the property. Brown and Myers, the assignees of Snyder, commenced a similar suit in the court of common pleas of Harrison county, which was removed to the United States circuit court after an injunction had been obtained in the state court restraining the oil company from operating under its lease, and under the protection of which Brown and Myers took possession. A motion having been filed for a temporary injunction in the action commenced originally in the United States court by the Allegheny Oil Company, and to dissolve the temporary injunction granted in the state court, the matter came on for hearing on the bill, answer, and affidavits. On hearing, the court refused the temporary injunction applied for, dismissed the bill of the Allegheny Oil Company, and made perpetual the injunction of the state court restraining the oil company from interfering with the assignees of the Snyder lease.

W. G. Shotwell and Lee & Chapman, for appellants.
D. A. Hollingsworth, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

The leading question in the case is as to the construction of the Snyder lease. As we read this instrument, applying the familiar rule that all parts of it must be given effect if possible, and the intention of the parties gathered from the four corners of the instrument, we find it to be a lease of a certain tract of land for the purpose of removing oil and gas therefrom, together with certain privileges to enable the lessee to reach and remove the same from the premises. As was said by the supreme court of Ohio in Harris v. Oil Co., 57 Ohio St. 129, 50 N. E. 1129:

"An instrument in such form is more than a mere license. It is a lease of the land for the purpose and period limited therein, and the lessee has a vested right to the possession of the land to the extent reasonably necessary to perform the terms of the instrument on his part."

By the terms of the habendum clause the lessee is to enjoy the estate for the term of two years, and as long thereafter as oil and gas are found in paying quantities on the premises, not exceeding 25 years, in the whole, from the date thereof, for which the lessee is to render to the lessor one-eighth part of the oil; and, for any wells producing gas in sufficient quantities to justify marketing, the lessee is to pay at the rate of $150 per year. Thus far no time has been fixed for the beginning of operations on the premises, and no clause of forfeiture is inserted for the failure to drill and develop the same. It is then provided:

"In case no well is drilled on said premises within two years from the date hereof, the lease shall become null and void, unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter."

That is to say, the lessee is given two years within which to drill, which privilege he may extend by the payment for further delay at the rate of one dollar per acre at or before the end of the following year. It is claimed that the consideration of one dollar may support the grant of the two-years term, but the privilege of extending

the same beyond the term of two years is supported by no consideration and is entirely at the option of the lessee, and, before it can become a binding agreement, requires an engagement upon the part of the lessee to pay the stipulated sum of one dollar per acre. We are unable to agree with this construction, although this interpretation is supported by a decision of the circuit court of Ohio for the Seventh judicial circuit, in the case of Brown and Myers v. Ohio Oil Company et al. We have been furnished with a manuscript copy of the opinion in that case. While the opinion of that court is not conclusive upon us, it is nevertheless entitled to great respect, being the decision of an able court. So far as the opinion discloses, the lease in that case was like the one now under consideration. In the opinion the court say:

"The lessee, plaintiffs, had paid a consideration for the privilege for a specified term of two years, but no longer, and all rights under the lease ceased unless some new contract was made. The lease, as we have seen, provided how a new contract might have been made. It gives the lessee the option of making a new contract upon a new and an increased consideration; but, to obtain this new right or license before developing and holding the territory for the period of two years, the lessee must have elected to avail himself of that provision of the lease,—have notified the lessor of this promise to pay the increased or new consideration for the further time."

This construction undertakes to divide the lease into independent parts, and annuls the effect of the privilege granted to the lessee of continuing the right to drill a well upon payment of the annual sum stipulated. We are of opinion that this lease constituted an entire contract, and that the consideration recited supports not only the grant of the two-years term, but, as well, the privilege of extending the time of drilling, by paying the stipulated price therefor. The learned judge who delivered the opinion reached the conclusion that this agreement for further time was unsupported by a consideration, and required a new agreement between the lessor and lessee, which must be in writing and recorded, under the statute of Ohio, or the lease would become void as against the subsequent lessee. In support of this conclusion he cites Northwestern Ohio Natural Gas Co. v. City of Tiffin, 59 Ohio St. 420, 54 N. E. 77. In that case, however, there was no stipulation for extension of time of drilling upon the face of the lease. That lease expired in five years, by its terms. It was attempted to hold it as against a subsequent lessee by a certain extension, indorsed on the back of the lease, but not recorded. In the case in the circuit court and the one at bar the agreement for extension, in the construction we give the lease, is found upon its face, and is of record. This instrument is a contract. Assuming now that it is free from fraud, and between parties capable of contracting, it can be supported by the consideration of one dollar as well as any other valuable consideration. It is an indivisible agreement. Each part of it must be given effect. We can add nothing to it and take nothing from it. For the consideration named the lessee received a conveyance of the term, as we have already stated, with a stipulation that the lease should become void unless delay in sinking a well within the term of the lease should be paid for at the rate of one dollar per acre at the end of two years. This

privilege is not to be separated from the other conditions of the lease. It is one of its terms, and must be given force and effect. Seeking to ascertain its meaning, as it has been reduced to writing by the parties, we think it is to be construed as conveying a term within the 25 years, as we have heretofore said, but the grant to be void in either the contingency of failing to drill a well in 2 years, or to pay at the rate stipulated in the lease for the delay.' Either the well must be drilled within the time named, or the rate stipulated must be paid. It is urged that this construction permits the lessee to hold the territory for the term of 25 years without drilling or developing the same, paying only the rental of $114 per year, and that this would work great hardship to the landowner,· tying up his lands for speculative purposes, and permitting wells on adjoining lands to drain his premises of their value. This contract, in view of its peculiar purpose and object in the development of oil and gas in the territory, has written into it an implied covenant on the part of the lessee that he will drill and operate such number of oil wells on the lands as would be ordinarily required for the production of oil contained in such lands, and afford ordinary protection to the lines. This was the holding of the supreme court of Ohio in Harris v. Oil Co., supra, and has become a rule of property in Ohio; and the lessor is not obliged to let the lessee hold this land indefinitely, but may have an action upon this implied covenant for the proper development of the oil and gas on the premises.

We have now to deal with the Ohio statute requiring oil leases and licenses to be entered of record. This statute, passed April 11, 1888, now section 4112a, Rev. St. Ohio, provides:

"That all leases and licenses, and assignments thereof, or of any interest therein, heretofore executed, given or made, for, upon or concerning any lands or tenements in this state, whereby any right is given or granted to operate, or to sink or drill wells thereon for natural gas and petroleum or either, or pertaining thereto, shall be recorded in the lease record in the office of the recorder of the proper county by the first day of September, 1888, and all such leases, licenses and assignments hereafter executed, given, or made, shall be filed for record as aforesaid, forthwith, and recorded in the said lease record, without delay, and shall not be removed until recorded, and no such lease or license hereafter executed, or given, unless the person claiming thereunder is in actual and open possession, shall have any force or validity, until the same is filed for record as aforesaid, except as between the parties thereto, nor shall any such lease or license, heretofore executed, or given, and not recorded by the first day of September, 1888, have any force or validity thereafter until filed for record, except as between the parties thereto, and as to persons claiming thereunder and in actual and open possession."

This statute was construed by the supreme court of Ohio in the case of Northwestern Ohio Natural Gas Co. v. City of Tiffin, 59 Ohio St. 420, 54 N. E. 77, and was held to establish a rule governing leases and licenses of the class referred to, and to take such leases and licenses out of sections 4112, 4134, Rev. St. Ohio; and the court held such leases and licenses to be without effect, either at law or in equity, as against a subsequent lessee or licensee or other third person acquiring an interest in or lien on the land, although he took with notice of such prior unrecorded lease or license, unless the person claiming thereunder was at the time in the actual possession of

the land. This construction was in harmony with the interpretation given by the supreme court in numerous cases of the statute requiring the recording of mortgages, in which it has been held that as against third persons who acquire an interest in or lien on the property, although acquired with knowledge of the existence of the mortgage, the mortgage is without effect until recorded. The statute under consideration was held by the supreme court of Ohio to lay down an exclusive rule, requiring the recording of such instruments, and making the record thereof the only notice that can be available against the rights of third persons obtaining interests in the land, except in cases where the lessee is in actual possession thereof. Is the instrument under consideration—the lease of Fowler to Snyder—an instrument entitled to record under this section of the statute, and, when recorded, is it notice to all persons dealing with the property? The instrument has but a single witness. Treating the case now within the conceded facts, and laying aside the attempted acknowledgment and witnessing of the instrument at a later date, and assuming that under the statute of Ohio such a lease requires two witnesses, and to be acknowledged with the formalities required under the Ohio statutes, it has frequently been held by the supreme court of Ohio that a defectively executed or acknowledded instrument of this kind for the conveyance of land, while not a legal conveyance, may be treated as a good agreement in equity to convey the premises, and when free from fraud may be enforced as such. Barr v. Hatch, 3 Ohio, 527; Williams v. Sprigg, 6 Ohio St. 585. A lease with one witness conveys an equitable title. Abbott v. Bosworth, 36 Ohio St. 605. The object of the statute under consideration was to require not only leases, but licenses, to be recorded; and, while the instrument may be defective as a legal lease, nevertheless, being in writing and signed by the parties, and containing upon its face a license or privilege to the party to enter upon the premises, with an exclusive right to enter and operate for oil and gas, we think such an instrument is such a license as is required by the statute to be of record, and which, when recorded, will have the effect of giving notice to others. By this construction the purpose of the statute is effected, and all licensees or lessees are required to have their titles of record, so as to give notice to people dealing with the property thereafter. If it could be assumed that this instrument was not within the statute, and that the parties were not required to take notice of the record thereof, it is a good contract for the making of a lease, and an equity is created which subsequent purchasers with knowledge are bound to take notice of. In this case it is admitted in the pleadings that the lessee and assignee had notice of the Snyder lease, but believed that it had been abandoned and the rights of the parties had ceased thereunder. No facts are set forth justifying this belief. That such equities are protected when subsequent purchasers have knowledge thereof is well established in Ohio: Morris v. Daniels, 35 Ohio St. 406; Varwig v. Railroad Co., 54 Ohio St. 455, 44 N. E. 92. It is said the effect of this construction will be to specifically enforce a contract based upon entirely inadequate consideration, and that an injunction re-

straining the parties interested from interfering with the lease held by Brown and Myers under Snyder will have an effect to specifically enforce that contract. Nothing is averred in the pleadings in any wise attacking the Snyder lease for fraud or inadequacy of consideration. In such a case mere inadequacy of consideration is no reason for withholding specific performance. Cathcart v. Robinson, 5 Pet. 263, 8 L. Ed. 120.

The question is made as to the right to try disputed questions of title under the allegations of the bill of the appellees. Under the Ohio Statutes (section 5779) an action is given to one in possession of real estate to quiet title against adverse claimants. There is no allegation in the petition filed by appellees in the state court that they were in possession at the time of the bringing of the action, nor has any amendment been made in that regard in the circuit court. We do not think the remedy given by the Ohio statute is exclusive in a case presenting the facts of the one under consideration. The equitable estate of appellees was in danger of destruction by the removal of gas and oil. In such case equity will intervene to prevent irreparable injury. Having acquired jurisdiction for the purpose of preventing waste and the destruction of the estate; a court of equity will retain jurisdiction for the purpose of granting full relief. Pom. Eq. Jur. §§ 237, 1399; Bettmann v. Harness, 42 W. Va. 433, 26 S. E. 271.

It is urged by counsel for appellant that the circuit court erred in disposing of the cases on their merits, and entering final decrees therein without taking proofs in due course under the equity rules. The cases came on for hearing on the application of the oil company for a temporary injunction, the granting or refusal of which necessarily involved the continuing of the injunction granted in the state court, as well as the cross application of the oil company for an injunction. The court considered these cases together. The cases stood upon bill, answer, and affidavits. In view of the construction given the Snyder lease in the circuit court, affirmed in this court, the holders thereof were entitled to have their rights protected, and interference therewith by holders of the second lease enjoined. The first lease being held valid, the attempted second lease must necessarily fail. There was nothing in the bill of the Allegheny Oil Company in the one case, or its answer in the other, which required further testimony before construction and effect could be given to the first lease. As was said by Judge Thompson in the circuit court, the facts were substantially undisputed. The allegation made that Fowler understood the premises were to be promptly drilled for oil and gas could not affect the agreement as reduced to writing, in the absence of allegations of fraud or mistake. There was no attempt to reform the instrument. No amendment to the bill or answer was proposed, nor has there been any suggestion of further facts material to the controversy. In such cases the courts of the United States may proceed to administer final relief without putting the parties to the expense and delay of protracted litigation. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856, citing, with approval, Gardt v. Brown, 113 Ill. 475; Green

v. Mills, 16 C. C. A. 516, 69 Fed. 852, 25 U. S. App. 383; and the decision of this court in Mayor, etc., of Knoxville v. Africa, 23 C. C. A. 252, 77 Fed. 501, 47 U. S. App. 74. Finding no error in the decrees entered in the court below, the same will be affirmed.