# LOGAN NATURAL GAS & FUEL CO. v. GREAT SOUTHERN GAS & OIL CO.

(Circuit Court of Appeals, Sixth Circuit. December 21, 1903.)

No. 1,205.

**1. OIL AND GAS LEASES—IMPLIED COVENANT TO DEVELOP THE PROPERTY—ABANDONMENT BY DELAY.**

Leases were executed by owners of lands purporting to grant the same to an oil company for the purpose only of operating thereon for oil and gas, in consideration of a royalty to be paid the lessors, so long as oil and gas should be found thereon in paying quantities. No other time was stated for the termination of the grant. nor was any time fixed for the commencement of operations. *Held,* that it was an implied condition of such leases that the lessee should drill wells and commence operations thereunder within a reasonable time, and that its failure to take any steps to that end for four years entitled the lessors to treat the contracts as abandoned, and to lease to other parties.

**2. SAME.**

The fact that under a provision of such leases the lessee issued to the lessors what were denominated "first mortgage bonds" for a certain amount per acre, with interest payable from its net profits, reserving the right to cancel the same and abandon the leases, did not affect the right of the lessors to treat the leases as abandoned, although they had not returned the bonds, where they had received no payments thereon, such bonds not being negotiable nor of any validity after the leases were terminated by the act of either party.

**8. SAME—RIGHTS OF LESSEE—JURISDICTION OF EQUITY TO PROTECT.**

A lessee under an oil and gas lease, although out of possession, may maintain a suit in equity in a federal court to protect his rights thereunder by enjoining the removal of oil or gas from the premises by a claimant under another lease, the effect of which would be to destroy his estate, and, having acquired jurisdiction for that purpose, the court may retain it to settle the question of title as between the parties, and to cancel defendant's lease as a cloud on complainant's title.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

The bill in this case was filed by the appellee, who claims certain rights as assignee of two leases given by Noah Conrad and Anna E. Sheets, respectively, on May 4, 1898, to one Carr, conferring the exclusive right to operate on the lands described therein for gas and oil, against the appellant, who claims, as assignee, similar rights under leases executed by the same lessors on April 12, 1894, to the Fairfield Gas & Oil Company, which last-mentioned leases, as the bill states, had been abandoned by the appellant at the time when the leases under which the appellee claims were executed. The bill alleges that the appellee took possession of said lands, and that the appellant has since invaded the possession under claim of right acquired by its said leases, and is erecting a derrick and beginning a well for the purpose of taking the oil and gas in said lands, and intends to prosecute its said purpose. The relief prayed is that the appellant may be enjoined from further acts of trespass, and that the cloud upon the appellee's title created by the appellant's claims under the earlier leases may be removed. The appellant answered the bill denying that its said leases had been abandoned, claiming them to be in full force, denying that the appellee had at any time been in possession of the lands, but admitting that the appellant had taken possession and was preparing and intending to operate thereon for taking the oil and gas, justifying itself under its leases. The bill was sustained at the hearing upon the pleadings and proofs in the Circuit Court, the presiding judge being of opinion that the lessee in the leases of 1894 had forfeited its claims thereunder by neglect-

ing for so long a time to enter upon the performance of its own obligations under it, and a decree was entered granting the relief prayed.

M. A. Daugherty and Lawrence T. Neal, for appellant.

F. D. Turner and F. A. Durban, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge, having made the preceding statement of the case, delivered the opinion of the court.

The decisive question in this controversy is the one upon which the decree of the Circuit Court was turned; that is to say, the question whether the lessors in the leases to Carr, in 1898, had at that time the lawful right to grant the leases by reason of the abandonment or forfeiture of the former leases to the Fairfield Oil & Gas Company by the lessee therein.

The original leases to the Fairfield Oil & Gas Company were alike in all substantial particulars, and purported to grant the lands described to the lessee for the purpose only of operating thereon to obtain the oil and gas supposed to be contained therein, "so long as oil and gas shall be found in paying quantities on said described lands, or the said second party, or his heirs or assigns, continue to operate a pipe line through the same." The consideration of the grant was that the lessee should deliver to the lessor one-eighth of all the oil found on the premises and delivered into tank or pipe line, and should give the lessor "first mortgage bonds" in the amount of $2 and interest at 4 per cent. per acre for the number of acres leased, to be paid out of the net profits of the lessee in the business in which it was engaged, which bonds contained a reservation of the right to the lessee to throw up its leases and cancel the bonds, and the further agreement on the part of the lessee that if gas should be found it would furnish it to the lessor at his residence free of cost. No other time was stated in the leases for the termination of the grant than as above stated, and no time for the commencement and continuance of the contemplated operations on the part of the lessee was stipulated for in the terms of the contract. Neither the immediate lessee nor its assigns ever took possession or any steps toward the exploration of, or operating upon, the lands for oil or gas for more than four years after those leases were made, although it was frequently urged by the lessors to do so. One or more "dividends" out of the profits of the company were declared to the lessors as contemplated by the bonds, but the latter declined or neglected to take them. Then, on May 4, 1898, the lessors made the leases to Carr, which were assigned to the appellee, as above stated.

The appellant contends that leases such as those to the Fairfield Oil & Gas Company are held by the Supreme Court of Ohio to grant an interest or estate in the land, and not a mere license, as is held in other states with regard to such instruments, and it is contended that it is the duty of the Circuit Court of the United States to follow the ruling of the state court upon this subject. Both these propositions may be admitted. But we do not think that upon the proper construction of these leases it is very material whether they are to be classified technically as leases granting an interest in land or as licenses granting privileges.

As we have already pointed out, no limitation of the time is fixed during which the leases were to run, other than "so long as oil or gas shall be found in paying quantities." But, what is more important to the present purpose, no time whatever is fixed within which it shall be ascertained by the lessee whether oil or gas exist in paying quantities, nor when operations shall begin if the exploration proves successful. The argument is that the contract fixes a limit for the holding under the lease, and that no other can be implied. The result of the appellant's contention would be that if the lessee should not proceed to find out whether oil or gas could be found in paying quantities the lease would run on interminably.

It is a well known fact that petroleum and natural gas shift in locality, and are inclined to run from place to place, especially if in the neighborhood, as was the case here, those substances are being pumped out. The proof shows that pumping operations in that locality were anticipated at the time the first leases were made. Indeed, the "profits" out of which the bonds above mentioned were to be paid were to come from such operations, in which the company was intending to engage extensively. The parties to the lease knew all this, and that the lessors' interest would probably be jeopardized, and possibly be destroyed, if operations under the lease were long delayed. And, supposing the leases might continue so long as oil or gas was found, if found, we think it is to be implied from the provisions of the leases and the character of the subject-matter that it was expected by the lessors that reasonably prompt action would be taken to perform the stipulations, that which was implied being first in order, and that the lessee must have understood that this was the lessors' expectation. All the motives leading to the making of the leases on the part of the lessors required it, and the lessee knew it. The contract for the getting out of the oil and gas was the principal thing which interested the parties. The other stipulations were subsidiary to it, and were not intended to create a larger estate or interest in the land than the principal purpose of the contract required. The leases recite that the grant is for that purpose only, and it seems absurd to suppose it was intended that the grant should outlive it. Under such circumstances, we think the implication is as effective as if, in words, it had been incorporated in the lease.

It was said by Judge Day, now Mr. Justice Day, in delivering the opinion of this court in Allegheny Oil Co. v. Snyder, 106 Fed. 764, 768, 45 C. C. A. 604, in speaking of a contract for the leasing of land for the development of oil and gas, that "this contract, in view of its peculiar purpose and object in the development of oil and gas in the territory, has written into it an implied contract on the part of the lessee that he will drill and operate such number of oil wells on the lands as would be ordinarily required for the production of oil contained in such lands." But such a covenant would be devoid of substance, and would not fulfill the reason for its implication, unless it was intended to be performed within some reasonable time.

The case of Harris v. Ohio Coal Co., 57 Ohio St. 118, 48 N. E. 502, is distinguishable in important particulars. In the lease there under consideration certain grounds upon which it might be forfeited were

expressed in the lease, and it was held that this excluded the implication of other grounds. Moreover, the contract had been in large part executed, and the defendant was, and from the date of the lease had been, in possession for the purpose of performing it.

In the present case, instead of complying with the reasonable requirements of the contract, the lessee held on for four years and did nothing, and now contends, in effect, that it might have postponed operations indefinitely to suit its own interests. We think the lessors were justified in treating the contract as abandoned, and that by consequence the lease, which was appurtenant to it, expired with it. Counsel for the appellant contend that it had no intention of abandoning the contract, and that there can be no abandonment without a purpose to abandon. This proposition of law is no doubt correct, but in business transactions a man's intention is to be gathered from his conduct, rather than from what he meditates, if the latter is inconsistent with the former. Besides, it is a well-settled rule in the law of contracts that if the party upon whom rests the burden of active performance fails to proceed with it in substantial accordance with his stipulations the other party may treat it as abandoned. If, as we hold, these lessors had that right, it follows that there was no impediment to their leasing to another. It may be that the party who, in such circumstances, elects to treat the contract as abandoned, is bound to return whatever of value he has received from the other party. But here there was nothing to restore. The dividends declared to the lessors in pursuance of the bonds remain in the treasury of the lessee, and the bonds themselves are not the obligations of a stranger, which would have a value in the hands of the lessee, but are mere agreements inter partes, not negotiable, which would become null by the rescission of the contract, and of no more value than waste paper. This is said upon the assumption that, upon electing to treat the contract as abandoned, the lessor would retain no right of remedy upon the bonds.

It is further urged that the proof shows that the appellee was not in possession at the time the bill was filed, and that, the object of the bill being to remove a cloud upon the title of the appellee, the suit cannot be maintained either under the law of Ohio nor under the ruling of the federal courts, where the possession of the complainant is a condition to the prosecution of such a remedy. But the immediate purpose of the suit is to restrain waste and threatened trespasses, and the court may entertain the bill for that purpose, even if the plaintiff be not in possession, and, having thus acquired jurisdiction, it may also proceed to settle the question of title and remove the cloud. The same question was raised in the case of Allegheny Oil Co. v. Snyder, supra, and the same answer was given. We applied the same doctrine in Peck v. Ayers & Lord Tie Company, 116 Fed. 273, 53 C. C. A. 551, where similar facts existed, notwithstanding the suit could not have been maintained if the sole object had been to quiet title.

We are of opinion that the decree of the Circuit Court should be affirmed. It is so ordered.