## KENTUCKY COKE CO. v. KEYSTONE GAS CO.

(Circuit Court of Appeals, Sixth Circuit. February 15, 1924.)

No. 3885.

1. **Mines and minerals �köö55(5)—Exception in deed of "mineral" includes oil and gas.**

An exception in a deed of "all the mineral on said land," nothing else appearing, includes in the exception oil and gas.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

2. **Deeds �köö93—Where clause is ambiguous surrounding circumstances may show intention of parties.**

Where a clause in a deed is ambiguous, the intention of the parties is to be ascertained from the instrument itself and from pertinent testimony as to the circumstances connected with its execution, and that intention controls.

3. **Deeds �köö90—Ambiguous language construed in favor of grantee.**

Ambiguous language in a deed is to be strictly construed against the grantor and in favor of the grantee.

4. **Mines and minerals �köö55(5)—The word "mineral," as used in a deed, held not intended to include oil and gas.**

One Apperson Hays, owner of a tract of land, conveyed all the mineral on the land, with certain timber and mining rights, but reserving all the oil and gas therein. He afterward conveyed the land to a relative without reservation. This grantee subsequently conveyed to another relative, "excluding the, all the mineral on said land, excluding all the timber that belongs to Epperson Hays." *Held*, in view of extrinsic testimony showing that all parties had knowledge of the prior conveyance by Hays of mineral and timber rights, that it was the intention to exclude from the second deed only what was covered by such conveyance, that the word "mineral" was used and understood as meaning the coal thereby conveyed, and that the oil and gas rights passed to the second grantee.

5. **Equity ⊛ᵓ39(2)—Mines and minerals ⊛ᵓ81—Lessee out of possession may sue to restrain another in possession removing oil and gas; having acquired jurisdiction to prevent waste, equity will retain it to adjudicate title.**

An oil and gas lessee, though out of possession, may maintain a suit in equity to restrain another in possession from removing the oil and gas from the land, and having acquired jurisdiction for the purpose of preventing waste, the court of equity will retain it to grant full relief by determining the questions of title and right of possession.

6. **Parent and child ⊛ᵓ12—Power of attorney held to authorize conveyance of property acquired after its execution.**

A power of attorney executed by a father to his two sons "to make sale of any or all real, personal or mixed property owned by me wherever situated or to lease, transfer, assign or incumber the same," *held* to authorize the attorneys in fact to assign an oil and gas lease acquired by them in the father's name after execution of the power of attorney.

7. **Estoppel ⊛ᵓ31—Attorneys in fact estopped to deny validity of transfer made for their principal.**

Attorneys in fact, who executed an assignment of an oil and gas lease for their principal and "in their own right," and who were afterward made sole devisees of their principal under his will, would be estopped to question the validity of the assignment.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

⊛ᵓFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the Keystone Gas Company against the Kentucky Coke Company. Decree for complainant, and defendant appeals. Affirmed and remanded.

Matthew O'Doherty, of Louisville, Ky., and Joseph D. Harkins, of Prestonsburg, Ky., for appellant.

George B. Martin, of Catlettsburg, Ky. (Martin & Smith, of Catlettsburg, Ky., on the brief), for appellee.

Before DENISON and MACK, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge. This case presents a controversy as to the ownership of the oil and gas rights in a 100-acre tract of land situated in Floyd county, Ky. Each of the parties is a corporation. On the 1st day of November, 1905, Apperson Hays, who is variously referred to in the record as Epperson, Eperson, Epison, Epp, and Ep Hays, and his wife, conveyed to the Beaver Creek Coal & Coke Company, a corporation, all the mineral on the land in controversy, together with certain timber and mining rights, but reserving all the oil and gas therein. On April 15, 1911, Hays and his then wife conveyed the land in controversy to Louisa Hoover, wife of Melvin Hoover. In this deed no reference was made to the former deed to the Beaver Creek Coal & Coke Company. August 16, 1913, Louisa Hoover and husband conveyed the land to Daisy Dudley, wife of Ballard Dudley, and in the deed executed by them there is contained the following clause:

"Excluding the, all the mineral on said land, excluding all the timber that belongs to Epperson Hays."

January 2, 1915, Ballard Dudley, and wife, Daisy Dudley, executed to G. H. Dimick, Jr., a lease to the oil and gas on this land, which lease was by G. H. Dimick, Jr., assigned to G. H. Dimick, Sr., on January 9, 1915. By virtue of a power of attorney executed January 28, 1914, by G. H. Dimick, Sr., to G. H. Dimick, Jr., and Tom Dimick, his sons, said lease was assigned to the appellee, Keystone Gas Company, on the 1st day of February, 1917. These conveyances were duly placed of record, following the dates upon which they were respectively executed. On the 2d day of May, 1921, there was placed of record in Floyd county an instrument, of date April 20, 1921, bearing the signatures of Melvin Hoover and Louisa Hoover, which appear to have been stricken out, and the signatures of Epperson Hays and Nannie Hays, which instrument purports to be a deed of correction, and which by its terms conveys to Daisy Dudley "all the oil and gas in, under or upon" the lands in controversy. June 6, 1921, Melvin Hoover and wife, Louisa Hoover, executed to appellant, the Kentucky Coke Company, an instrument whereby they purported to lease to appellant the oil and gas, together with certain other rights incident to the production thereof, in said 100-acre tract of land, which is described generally in this instrument and referred to as "the same land conveyed to the lessor, by Epperson Hays by deed dated April ——, 1911."

Acting under this latter conveyance the Kentucky Coke Company proceeded to go upon said land, to prospect and drill for oil and gas,

296 F.—21

whereupon appellee, Keystone Gas Company, on October 19, 1921, filed its bill in the District Court of the United States for the Eastern District of Kentucky, setting up therein that it was the owner of the oil and gas rights in and to this land by reason of the chain of title above set out, vesting, as it claimed, absolute title thereto in it, and alleging that the lease under which appellant claimed of June 6, 1921, was procured with full notice of appellee's rights and the condition of the title as it then existed, that this lease vested no rights whatsoever in the lessee, and that the same was a cloud upon the title of appellee.

By the bill it was sought to have the title to said oil and gas declared to be in appellee; to have the instrument under which appellant claimed declared void and set aside as a cloud upon the title of appellee; to have appellant enjoined from in any wise going upon said lands or interfering with the rights of appellee as claimed therein, and for an accounting for all damages done by reason of any prospecting or drilling thereon, and it is particularly alleged in the bill that the exclusion clause appearing in the deed above mentioned from Melvin Hoover and wife, Louisa Hoover, was inserted by mistake, that what was intended by the clause quoted was to except from the deed only the coal which had been sold by Apperson Hays to the Beaver Creek Coal & Coke Company, and upon this theory the bill sought to have the deed corrected or reformed, so as to show the true meaning of the parties. It is set out, however that, if mistaken in the rights claimed under the deed of August 16, 1913, appellee is the owner of said oil and gas rights by virtue of the deed of April 20, 1921.

The Kentucky Coke Company in its answer presented an issue as to all the principal contentions set out in the bill, and particularly was it averred in the answer that by the deed of August 16, 1913, no oil and gas rights were conveyed, and that no intention to convey the same existed on the part of Melvin Hoover and wife, and that their intention to reserve the same from the conveyance expressly appears by the clause quoted above from this deed; that no right of correction or reformation existed, and that by the deed of April 20, 1921, no rights whatever were acquired by appellee, for the reason that this deed was never executed nor delivered within the meaning of the law; and that appellant acquired full title to all oil and gas and the rights sought to be conveyed incident thereto by the instrument of June 6, 1921; furthermore, that the mesne conveyances and assignments whereby appellee claimed said rights were respectively void and without authority. It is further set up in the answer as a defense that a suit was instituted in the Floyd county circuit court of Kentucky by Louisa Hoover against Daisy Dudley, whereby it was sought to have Louisa Hoover adjudged to be the owner of the oil and gas in said lands, and that a decree was rendered by the state court so adjudging; but it appears that this suit is not now urged with much seriousness, if relied upon at all.

Upon the pleadings thus presented proof was heard before the court orally and by depositions, and after a careful consideration of all the questions presented the court decreed in favor of appellee, holding that it was the owner of the oil and gas rights in and to said land by virtue of said deed of August 16, 1913, and the subsequent convey-

ances thereunder; that the injunction sought should be made perpetual, and that an accounting be had to ascertain the amount due for all waste committed on said premises, and for the reasonable value of all oil or gas "produced, marketed, or used." From this decree an appeal was duly prayed by the Kentucky Coke Company, and 16 assignments of error were filed to the action of the District Judge, only 7 of which it seems are urged in this court.

The foregoing statement of facts is necessary to a proper understanding of this case. The assignments of error now relied upon are as follows: (1) To the ruling of the court holding that the appellee had shown any title to the leasehold in question. (2) To the ruling of the court that the appellee had shown such title thereto as entitled it to the injunction prayed for, or to a decree quieting its title, and in effect ousting appellant from possession. The seventh, eighth, ninth, tenth, and eleventh assignments of error are as follows:

"(7) The court erred in holding that the plaintiff had such title to the leasehold in controversy as entitled it to the injunction prayed for, and to a decree quieting its title.

"(8) Plaintiff's remedy, if entitled to any, was by action in ejectment, in which its title and that of Louisa Hoover and her husband, Melvin Hoover, and their assigns, could be tried and determined.

"(9) The plaintiff did not establish its title to the oil or gas on the leasehold in dispute. The defendant established the better title. The very most the court could have properly done in plaintiff's favor on the record before it, and as defendant was in actual possession of the leasehold, was to dismiss plaintiff's bill, with leave to bring an action at law in ejectment for the leased premises.

"(10) It appearing that the defendant under claim of title was in actual possession of the leasehold in controversy at and prior to the institution of this action, and continuously thereafter, actually engaged in the drilling of gas wells and taking and transporting gas therefrom, the court erred in granting the injunction prayed for. The plaintiff was not, in any event, entitled to equitable relief by injunction or otherwise. Its remedy, if entitled to any, was by an action in ejectment. The plaintiff had a plain remedy at law, and the court erred by its decree in denying the defendant its constitutional right to have its title to the leasehold tried and tested by the verdict of a jury in a common-law action.

"(11) Louisa Hoover's right to the gas and royalties of oil, if discovered, were involved in the case, and she is a necessary party defendant."

Assignments from 2 to 7 were not relied upon. As shown by the deeds above mentioned, the common source of the title to the oil and gas rights in question is Louisa Hoover, and the determinative question in the case is the proper construction to be given the clause, "Excluding the, all the mineral on said land, excluding all the timber that belongs to Epperson Hays," appearing in the deed from Louisa Hoover and husband to Daisy Dudley, executed August 16, 1913.

[1] There can be no question but that at the time of the execution of this deed the oil and gas rights in the lands conveyed were then vested in Louisa Hoover by the deed of Apperson Hays, and that the only rights which she would not acquire by this deed were the coal and timber rights formerly by him conveyed to the Beaver Creek Coal & Coke Company. Nothing else appearing, no oil and gas rights would have passed by the conveyance of Louisa Hoover, as the word "mineral" in the clause quoted would have excepted from the con-

veyance oil and gas, as well as all other forms of mineral. This is now settled law. Ohio Oil Co. v. Ind., 177 U. S. 190, 202, 20 Sup. Ct. 576, 44 L. Ed. 729; N. P. Ry. Co. v. Soderberg, 188 U. S. 526, 23 Sup. Ct. 365, 47 L. Ed. 575; Burke v. S. P. Co., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527; Lovelace v. S. W. Petroleum Co. (C. C. A. 6 C.) 267 Fed. 513; Townsend v. State, 147 Ind. 624, 47 N. E. 19, 62 Am. St. Rep. 477, 37 L. R. A. 294; Lanyon Zinc Co. v. Freeman, 68 Kan. 691, 75 Pac. 995, 1 Ann. Cas. 403; McKinney v. Central Ky. Natural Gas Co., 134 Ky. 239, 120 S. W. 314, 20 Ann. Cas. 934; Kelley v. Ohio Oil Co., 57 Ohio St. 317, 49 N. E. 399, 39 L. R. A. 765, 63 Am. St. Rep. 721; Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266; Westmoreland, etc., Gas Co. v. De Witt, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731; Marshall v. Mellon, 179 Pa. 371, 36 Atl. 201, 35 L. R. A. 816, 57 Am. St. Rep. 601; Murray v. Allred, 100 Tenn. 100, 43 S. W. 355, 39 L. R. A. 249, 66 Am. St. Rep. 740; Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117; Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Wilson v. Youst, 43 W. Va. 826, 28 S. E. 781, 39 L. R. A. 292; People's Gas Co. v. Tyner, 131 Ind. 277, 31 N. E. 59, 16 L. R. A. 443, 31 Am. St. Rep. 433; Manufacturers' Gas, etc., Co. v. Ind. Natural Gas Co., 155 Ind. 461, 57 N. E. 912, 50 L. R. A. 768; Hudson & Collins v. McGuire, 188 Ky. 712, 223 S. W. 1101, 17 A. L. R. 148; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369.

[2] The clause quoted from this deed is ambiguous, and a proper construction of the deed renders necessary a consideration of the circumstances connected with its execution, and the understanding and intention of the parties executing it at the time of its execution. Where such a condition exists, it is likewise well settled that the intention of the parties should be ascertained, if possible, from the instrument itself, and from such pertinent testimony as may be offered, and that such intention must control. McKinney v. Central Ky. Natural Gas Co., supra; Detlor v. Holland, supra; Dunham v. Kirkpatrick, 101 Pa. 36, 47 Am. Rep. 696; Right Of Way Oil Co. v. Gladys City Oil Co., etc., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Williams v. Paine, 169 U. S. 55, 76. 18 Sup. Ct. 279, 42 L. Ed. 658; Tiernan v. Jackson, 5 Pet. 580, 594, 8 L. Ed. 234; Prentice v. Duluth Storage Co., 58 Fed. 438, 7 C. C. A. 293; Marquette Cement, etc., Co. v. Oglesby Coal Co. (D. C.) 253 Fed. 107; 18 C. J. 252, § 198, and authorities there cited.

[3] And where the language is ambiguous the deed should be strictly construed as against the grantor and in favor of the grantee. Bender v. Fromberger, 4 Dall. 436, 440, 1 L. Ed. 898; Douglass v. Lewis, 131 U. S. 75, 85, 9 Sup. Ct. 634, 33 L. Ed. 53; 18 C. J. 263, § 219, and authorities there cited.

[4] It appears that Apperson Hays was the grandfather of Ballard Dudley, husband of Daisy Dudley, and by his last marriage was the stepfather of Melvin Hoover. These parties lived in the same community, and the record discloses nothing to rebut the natural presumption that, by reason of the family ties and the proximity of their homes one to another, there existed that relation between them which

would have brought about a common understanding of their respective activities, especially in the matter of conveyances such as are disclosed by this record, and in fact positive evidence of this state of facts is revealed by the record. At the time of the conveyance from Louisa Hoover to Daisy Dudley the parties fully understood the nature of the conveyances previously executed by Apperson Hays to the Beaver Creek Coal & Coke Company, and knew that Louisa Hoover held no title to the coal and timber rights conveyed by Hays to the Beaver Creek Coal & Coke Company. The deed from Louisa Hoover to Daisy Dudley was prepared by one Martin, who certainly was not skilled in the preparation of such instruments and who had no knowledge of the intention of the parties other than that acquired from them, and he inserted the clause in the deed excepting the mineral at the instance of the parties. The consideration paid by the Dudleys was the same which the Hoovers had paid for the land conveyed, and the fact that no profit was exacted by the Hoovers doubtless arose by reason of the relations existing between the families at that time.

At the date of this conveyance, while some activity was being manifested in the oil and gas industries in that immediate section, it was negligible as compared with that existing in 1921. Prior to the conveyance by Louisa Hoover to Daisy Dudley, the Hoovers had executed a lease to the oil and gas rights in these lands to a party whose name they had forgotten, and this lease had been abandoned—if it had ever been in any way asserted—at the time of the conveyance of August 16, 1913. In 1915, Daisy Dudley and husband executed the lease to G. H. Dimick, Jr., and thereafter received annual acreage rentals under the terms of this lease. These facts must have been known, and according to the evidence of two of the witnesses were known, to Melvin Hoover and his wife, yet during the entire period from 1913 to 1921 there is nothing to show that they ever made objection to such claim on the part of the Dudleys, or undertook to set up any rights whatsoever to the oil and gas thus leased to Dimick.

Furthermore, it is shown that Melvin Hoover and Louisa Hoover understood that they were conveying, and undertook to convey, just such property and property rights as Louisa Hoover has acquired by the deed of Apperson Hays, and that what was intended by the exclusion clause was to except from the conveyance by Louisa Hoover and Melvin Hoover to Daisy Dudley the property and rights which Apperson Hays had previously conveyed to the Beaver Creek Coal & Coke Company, which included, as above stated, only the coal and timber and rights incident thereto, and that at that time no thought existed on their part to reserve to themselves any rights to any minerals in the lands conveyed to Daisy Dudley. At the time of such conveyance there existed no understanding on their part that the word "mineral" embraced oil and gas, nor did any such knowledge come to them until long thereafter.

In an effort to express the intention of the parties, the draftsman of the deed of August 16, 1913, used the word which would naturally first present itself to the mind of one not familiar with legal phraseology—the word "excluding"—thus evidencing an intention to exclude from the deed that which the parties had no right to convey, or that

which it was understood had been previously conveyed, and it carries with it the intention of excluding certain property rather than the intention of reserving certain rights. This view is further strengthened by a consideration of the word "belongs," appearing in the clause quoted from the deed. By the use of this word it was evident the parties intended to say, "which had belonged"; that is to say, excluding the mineral and the timber which had belonged to Epperson Hays, but which had been by him conveyed to the Beaver Creek Coal & Coke Company. The word "mineral" was used in its narrow and restricted sense, but as then understood by the parties as referring to coal, and nothing else, and to give the word any other meaning as it appears in this deed would be to do violence to the evident intention of the parties and the construction which they placed upon it, and which, therefore, must be the one to be adopted by the court.

The subsequent deed of April 20, 1921, if valid in all respects, added nothing to the rights of Daisy Dudley, and in the view we have taken of the case it is unnecessary to determine the questions presented as to whether the deed is subject to the objections raised by appellant or not. This deed is worthy of consideration, however, as throwing further light upon the intention of the parties at the time of the execution of the first deed to Daisy Dudley, and for no other purpose is it here considered. It appears that, when it was desired by Keystone Gas Company to begin active operations on the land in question, a full investigation was made as to the title. The construction given the word "minerals" by the courts had then become known in that community, and for the purpose of removing any ambiguity appearing in the deed of August 16, 1913, a clause was inserted in the deed of April 20, 1921, to fully show that by the former deed it was the intention of the Hoovers to convey to Daisy Dudley specifically the oil and gas, as well as all other mineral rights, except those which had been conveyed to the Beaver Creek Coal & Coke Company by Hays. Ballard Dudley went to see Melvin Hoover and his wife concerning this deed, and in the conversation with them explained that the old deed had become worn to the extent that it had been separated into several pieces, that he desired them to execute another deed confirmatory of the old one, whereupon certain conversation ensued as to whether the old deed was of record, and it was then willingly agreed by the Hoovers that they would execute the deed as requested.

T. E. Dimick, a party interested in the Keystone Gas Company, C. H. Dyer, secretary-treasurer and general manager thereof, and Ballard Dudley, then returned to the home of the Hoovers with the new deed prepared, and with the old deed for purposes of comparison. The proof overwhelmingly discloses that the new deed was then read over by Dimick in the presence of Hoover and compared with the old deed, and specific attention drawn to the amendment in the confirmatory deed. This seemed acceptable to the Hoovers; they thereupon signed the deed in the presence of Dudley, Dimick, and Dyer, their signatures were witnessed by Dyer, and the deed delivered by the Hoovers to Dimick, with the understanding that a proper official would later return for the purpose of taking their acknowledgments. At the time this occurred no mention was made by either of the Hoovers to the effect

that they were the owners of the oil and gas in these lands, nor was any objection made to the statement in the confirmatory deed showing that it was their intention at the time of the prior deed to convey all such rights as they acquired under the deed from Apperson Hays. However, when a few days later one Allen returned for the purpose of taking their acknowledgments, it is evident from the record something had occurred to cause them to view the matter in a different way than they had previously done, and it was then that Melvin Hoover struck from the confirmatory deed the names of himself and wife. It becomes immaterial to consider his action in so doing, or whether or not there was such an execution and acknowledgment of the instrument as to admit it to record. They could then detract nothing from the rights conveyed by the deed of August 16, 1913, except by the consent of the grantee in that deed, and, as stated, this matter is referred to as further evidence of the construction the parties placed on this deed, and for no other purpose.

It results that by the lease of June 6, 1921, the Kentucky Coke Company acquired no rights whatsoever to the oil and gas sought to be therein conveyed. The clause in the deed of August 16, 1913, as above set out, was ambiguous, and abundantly justified proof in explanation thereof. Rock House Fork Land Co. v. Raleigh Brick & Tile Co., 83 W. Va. 20, 90 S. E. 684, 17 A. L. R. 144; McKinney's Heirs v. Central Ky. Natural Gas Co., supra; Hudson & Collins v. McGuire, supra; 18 C. J. 346, and authorities there cited; Wilson v. Marsee, 166 Ky. 487, 179 S. W. 410; Bain v. Tye, 160 Ky. 408, 169 S. W. 843; Kamer v. Bryant, 103 Ky. 723, 46 S. W. 14, 20 Ky. Law Rep. 340.

[5] It is urged by appellant that the suit in the District Court was improperly brought, that the court had no jurisdiction of it as a suit in equity, and that the same should have been dismissed and the parties left to their remedy at law. This position is not well taken. The bill was filed for the purpose of not only having the deed construed, but to stay waste on the property until the rights of the parties could be determined. Only a court of equity could have granted the parties the relief sought in the manner they were entitled to be granted relief at that time, and, having obtained jurisdiction for that purpose, the court had jurisdiction to determine all questions involved in the suit. The language of Judge Day in Allegheny Oil Co. v. Snyder, 106 Fed. 764, 770, 45 C. C. A. 604, 610, is especially applicable here, wherein it is said:

"The equitable estate of appellees was in danger of destruction by the removal of gas and oil. In such case equity will intervene to prevent irreparable injury. Having acquired jurisdiction for the purpose of preventing waste and the destruction of the estate, a court of equity will retain jurisdiction for the purpose of granting full relief."

In Logan Natural Gas & Fuel Co. v. Great Southern Gas & Oil Co., 126 Fed. 623, 626, 61 C. C. A. 359, 362, it is said:

"The immediate purpose of the suit is to restrain waste and threatened trespasses, and the court may entertain the bill for that purpose, even if the plaintiff be not in possession, and, having thus acquired jurisdiction, it may also proceed to settle the question of title and remove the cloud."

No extended reference and no particular review of the cases is necessary on this question. See Lindlay v. Raydure (Cochran, District Judge) 239 Fed. 928, and authorities therein cited.

It is further contended that the proof offered is not in accord with the issues presented by the pleadings. This position is likewise untenable. While the bill does seek to have the Louisa Hoover deed "corrected," as it is expressed, yet under the bill it is clearly contended that by virtue of that deed and the subsequent conveyances the Keystone Gas Company became the owner of the oil and gas rights in question, whether the deed of April 20, 1921, were valid or not, and whether the view taken by the pleader that it was a proper case for a correction of the deed was correct or not, the pleading was broad enough to warrant the introduction of evidence for the purpose of enabling the court to properly construe the instrument. Furthermore it seems the court below treated it as a case wherein an amendment had been properly offered and granted, to which no seasonable objection was made, and so far as the case is now concerned this court will treat the pleadings as containing the allegations which were considered to be contained therein by the court below.

[6] It is next contended that no rights passed to the Keystone Gas Company by the assignment of G. H. Dimick, Jr., and T. E. Dimick, purporting to act under the power of attorney from G. H. Dimick, Sr., to them, inasmuch as this power of attorney was executed prior to the acquisition of any lease to G. H. Dimick, Jr., and T. E. Dimick. The power of attorney contained the clause authorizing the attorneys in fact therein named "to make sale of any or all real, personal, or mixed property owned by me wherever situated, or to lease, transfer, assign or incumber the same. * * *" It is argued that the word "owned" necessarily limited the rights given by the power of attorney to property then in the possession of G. H. Dimick, Sr., and that no right of disposition to property subsequently acquired by him was vested in his attorneys in fact.

It is true a power of attorney should receive a strict construction (Penfold v. Warner, 35 Am. St. Rep. 593); however, in construing such an instrument, as with all instruments, the intention of the parties should be determined, if possible, and, looking to all the terms of the power of attorney in question, it is evident that the intention of G. H. Dimick, Sr., was to vest such rights in his two sons, as his attorneys in fact, as would enable them throughout the life of the instrument to exercise the powers of disposition as to all properties mentioned therein which G. H. Dimick, Sr., then owned or those which might be acquired by him which would fall within the terms of the instrument as such "property" as was mentioned therein. Penfold v. Warner, above; Fay v. Winchester, 4 Metc. (Mass.) 513; Benschoter v. Lalk, 24 Neb. 251, 38 N. W. 746; 2 C. J. 614, and the authorities cited therein. In C. J., supra, it is said in the text:

"General power to sell all lands which the principal may own especially when such appears to be the intention of principal as gathered from the whole instrument of appointment and the surrounding circumstances, will be held to include lands acquired during agency and after execution of the power."

[7] The right existed in G. H. Dimick, Jr., and T. E. Dimick, as attorneys in fact, to sign the lease in question; but, had no such right existed, inasmuch as it appears from the record that, by the will of G. H. Dimick, Sr., G. H. Dimick, Jr., and T. E. Dimick were named as the sole devisees therein, and any such rights as G. H. Dimick, Sr., may have held at his death passed to his devisees, the assignment of this lease by them as attorneys in fact and "in their own right" would clearly now estop them from denying that the Keystone Gas Company held any such rights as G. H. Dimick, Sr., held, or as were held by them by virtue of either the power of attorney or inheritance; and this would be true, whether the doctrine of estoppel as insisted upon by appellee should be held to apply or not. The contention of appellee is that, in view of the fact that certain shares of stock were issued to G. H. Dimick, Sr., by the Keystone Gas Company in consideration for the assignment of the lease to it, he would have been, and his heirs now are, estopped from denying the validity of the assignment. Powell v. Gossom, 18 B. Mon. (Ky.) 179; Columbia Land Co. v. Tinsley, 60 S. W. 10, 22 Ky. Law Rep. 1082; Graves v. Cord, 44 S. W. 665, 19 Ky. Law Rep. 1893; E. T. Kenney v. Anderson (Ky.) 81 S. W. 663; 21 C. J. 1080, and authorities cited; Johnson v. Johnson, 173 Ky. 701, 191 S. W. 674. However, as above held, we are of opinion the assignment by the attorneys in fact was valid.

The opinion herein expressed in no wise affects the rights of the parties as determined in the case in the state court above mentioned. That was a suit between Louisa Hoover and Daisy Dudley. The rights of the parties as determined in that suit in no wise affect the questions presented here, except as to the proper one to whom payment should be made as provided in the lease from Daisy Dudley to Keystone Gas Company, and inasmuch as the contention relative to the effect of the case in the state court upon the rights of the parties in this suit has been abandoned no further discussion of the question is necessary.

The other assignments of error present in different words substantially the same objections as those herein considered. Suffice it to say careful consideration has been given to every contention urged by appellee and to the questions presented by the supplemental brief which has been filed, but nothing has been found to warrant a contrary opinion to that above expressed.

The trial judge had some of the witnesses before him in person, and has given careful consideration to all the testimony, and there is abundant evidence to support the views taken by him as to the weight of the evidence; yet, if it devolved upon this court to weigh the testimony as now presented, after a careful consideration of the whole of it, we will say the same conclusions would be reached as were expressed as to the weight of the testimony by the trial court.

The judgment of the lower court is affirmed, and the case will be remanded, in order that the decree as to the accounting may be carried out.