CLARK v. LANGENBACH et al.

(Circuit Court of Appeals, Sixth Circuit. May 14, 1904.)

No. 1,273.

1. FORCIBLE ENTRY AND DETAINER—ACTION UNDER KENTUCKY STATUTE—ISSUES.

Under the Kentucky statute providing a summary proceeding to recover possession of lands from which plaintiff has been forcibly ousted, a lessee in an oil lease who was actually in possession for the purposes of his lease, under claim of right, when he was forcibly dispossessed by defendants, claiming under a subsequent lease, may recover his possession, although the owner and lessor was, in subordination to the lease, also in possession for general purposes, and regardless of the validity of his lease, the question of title not being an issue in such proceeding.

2. SAME—EVIDENCE.

In such an action plaintiff's lease was admissible in evidence for the purpose of showing the extent of his possession taken thereunder.

3. SAME—RIGHT TO REMEDY—RESISTANCE TO DISPOSSESSION.

Under such statute, which defines a forcible entry as "an entry without the consent of the person having the actual possession" (Civ. Code Ky. 1900, § 452), the person in possession is not required to resist dispossession by actual force, but is entitled to the remedy where he yields to threatened violence.

In Error to the Circuit Court of the United States for the Western District of Kentucky.

See 119 Fed. 349, 56 C. C. A. 253.

The court below gave to the jury the following charge:

"Gentlemen of the Jury: The first question submitted to you is this: When this action was brought, did the property sought to be recovered exceed in value the sum of two thousand dollars? If you believe from the preponderance of the evidence that the said property was then of the value only of two thousand dollars or less, you will return your verdict in this form: 'We of the jury find that the property sued for did not, when this action was brought, exceed in value the sum of two thousand dollars.' And if that is your verdict it will conclude your labors. I have so charged you because, unless the value of the property sued for then exceeded two thousand dollars, this court will have no jurisdiction to determine this case at all. But if you shall conclude from the evidence that the value of the property sued for did then exceed in amount the sum of two thousand dollars, then and in that event, but only in that event, the court instructs and charges you to find for the plaintiffs, and if you do find for the plaintiffs the form of your verdict can be simply: 'We of the jury find for the plaintiffs.'

"The reasons upon which the court charges you as last suggested may be thus stated: The lease to the plaintiffs was executed and delivered on May 22, 1900, and became effective from that time. Possession followed that lease as matter of law, at least so far as defendants were concerned. The rights conveyed by the lease covered the exclusive privilege to drill for minerals on the land for a period of 10 years, and of the existence and terms of the lease the defendants seem to have had notice when they entered. As both plaintiffs and defendants ultimately claim title under and from a common source,

all parties are estopped from denying or disputing the validity and sufficiency of the title to the land of W. H. Mann, and from that circumstance it must be presumed, for the purposes of this trial, that Mann's title to the land was good. Woolfolk v. Ashby, 2 Metc. (Ky.) 289; Winn v. Wilhite, 5 J. J. Marsh. 524; McClain v. Gregg, 2 A. K. Marsh. 456.

"I have stated in an opinion in writing, heretofore filed in the case, my views as to the proper construction of the terms of the plaintiffs' lease, and nothing has occurred to change the views then expressed. The lease by Mann to John A. Moore, A. C. Moore, and James & James, through whom the defendants claim, was made on September 2, 1901. The defendants' pleadings show conclusively, and the testimony is definite and positive, that the two leases covered the same tract of land; that it is located in the state of Kentucky, notwithstanding the word 'Ohio' in the plaintiffs' lease; and, speaking generally, both leases were for the mining and mineral privileges on that land. The defendants' pleadings manifest in the clearest way the immateriality of such use of the word 'Ohio,' and that it was regarded and treated by the defendants as immaterial. See, on this point, the very satisfactory language of the court in Smith v. Brown, 34 Mich. 459. It is too late to change that position now.

"It is contended on behalf of the defendants that the covenants of the plaintiffs' lease have not been performed by the lessees, and therefore that Mann had the right to lease to Moore & James, although Mann has not been heard to make any complaint of any breach of those covenants, nor any claim to a right to re-enter therefor. The court is of opinion that all questions as to the payment of rents, royalties, and penalties, and also all questions as to the performance of the covenants of the contract of lease between plaintiffs and W. H. Mann, are matters to which the defendants are strangers, and with which they have nothing to do. Those questions could properly arise only between the plaintiffs and the person with whom such covenants were stipulated. It is obvious that the defendants are not parties to any of those stipulations. These are matters which we speak of as 'res inter alios acta.' They are transactions between persons other than any of the defendants, and therefore are not available for them.

"The court is furthermore of opinion that the lease to the plaintiffs was not capable of being annulled merely by a subsequent lease from Mann to other persons without the consent of the plaintiffs, and there is no sufficient proof that the witness Cox had any authority, orally or otherwise, to consent to any surrender or release of plaintiffs' interests in or possession of the land. There was no evidence of any re-entry by Mann for breach of any condition subsequent in the lease to plaintiffs, and merely making a later lease to others was not equivalent in law to a re-entry. The court, moreover, is of opinion that there was no sufficient evidence to show that Mann either desired or had the right to re-enter. I think the defendants have not shown any right of entry as against the plaintiffs, and, if so, their entry was tortious.

"The lease from Mann to others, and their sublease to one or more of the defendants, seem to the court in no wise to afford an adequate shield or defense for either of them as against the prior and better rights acquired by the plaintiffs under the lease to them, and of which lease the defendants appear to have had notice. It seems to the court to be quite clear from the testimony of the defendants themselves that enough interference with the possession of the plaintiffs had occurred to justify the bringing of this action, and that, the priority of right being in the plaintiffs by virtue of the earlier lease to them, they are entitled as against the defendants to the possession of the mineral privileges covered by the lease to them. Mann's rights, if any, are in no way involved in this litigation. Both defendants, I believe, have testified that they took possession of the premises after the plaintiffs had done so under their lease, and the disseisin of the plaintiffs seems to have been accomplished by the acts of both of them. .

"In consequence of these views, the court is of opinion that the plaintiffs are entitled to all of the relief they specifically claim in their petition, and the jury is directed to find a verdict for the plaintiffs. The court thinks that no reasonable construction of the evidence would permit any other verdict."

Campbell & Campbell and C. L. & H. E. Jewett, for plaintiff in error.

Greer & Reed, for defendants in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This case was here on a former occasion upon a question relating to the jurisdiction of the Circuit Court, and was remanded to that court for further proceedings. Roberts v. Langenbach, 119 Fed. 349, 56 C. C. A. 253. For a statement of the nature of the action, reference may be had to the opinion of this court there reported. It is sufficient now to say that the suit was brought under a statute of Kentucky providing a summary proceeding for the recovery of the possession of lands from which the plaintiff has been forcibly ousted. The title is not involved further than it may characterize the possession of the plaintiff. The petition elaborates with unnecessary fullness the origin of the rights of the respective parties, but the substance of it is that the plaintiff was in possession of the lands described under what is termed a "mineral and oil lease" from one W. H. Mann, granting the right to explore, dig, mine, and sink wells and operate the same for the purpose of obtaining and removing the minerals, oil, and gas which might be found, and the construction of the necessary buildings and pipe lines; for which purposes the lessees were "to have and to hold the said premises" for the term of 10 years from May 23, 1900, rendering to the lessor a certain proportion of the oil, and a specified price for the minerals which might be produced. The lessor reserved the right to use and enjoy the land for the purpose of tillage, but not so as to interfere with the rights granted by the lease. The petition also states that the lessees went into possession of the premises for the purposes specified in the lease; that the defendants, with knowledge of this lease, subsequently procured a lease of similar character from Mann, and forcibly entered upon and dispossessed the plaintiffs while so in possession under the former lease; and the prayer was that the possession be restored to the plaintiffs. The answer denied that the sum involved in the controversy amounted to as much as $2,000, and claimed that for that reason the court was without jurisdiction, but admitted the plaintiff's lease, claiming, however, that it had been forfeited; admitted the procurement of their own lease, but denying that the plaintiffs were in possession at the time stated in the petition, or that the defendants forcibly entered the said premises. The cause was tried by the court and a jury. Evidence was produced by the parties upon the question of the sum or value of the subject of the controversy, and also upon the question as to whether the plaintiffs had been forcibly dispossessed. The court, in its instructions, left to the jury the question as to whether the value of the matter in controversy amounted to the sum of $2,000, exclusive of interest and costs, and instructed them that, if they should find for the plaintiff upon the issue respecting the amount involved, they should render a verdict on the merits for the plaintiffs; but that if they should find for the defendant on the issue relating to the jurisdiction, they should render a general verdict for that party. The jury found a verdict for the plaintiff which

signifies that they found the issue relating to the jurisdiction for the plaintiff, and accepted the court's instruction that the evidence required a verdict for the plaintiffs on the merits, if they reached that question. A judgment for the plaintiffs having been entered, the defendants brought the case here on a writ of error. There are several assignments of error, but, as counsel have preferred to discuss the questions they desire to submit in a more general way than they are presented by the particular language of their assignments, we are content to follow their method.

1. It is contended that the lease to the plaintiffs "was a mere option, which, not having been exercised, the owner of the land might treat as abandoned," the assumption being that the lease did not bind the lessees to do anything, and that they had not in fact done anything, under the lease. And on this contention counsel submit an argument fortified by reference to decided cases bearing on the construction of such leases. But we held in Allegheny Oil Co. v. Snyder, 106 Fed. 764, 45 C. C. A. 604, and Logan Natural Gas Co. v. Great Southern Gas Co., 126 Fed. 623, that, notwithstanding there was no express covenant on the part of the lessee, there was an implied stipulation that he would within a reasonable time proceed with the exploration and development of the lands leased, and that, if he did not do so, the lessor might treat the lease as forfeited. But we need not pursue that subject. If the plaintiffs were actually in possession under a claim of right, that was enough. The defendants, whether they had the better right to the possession or not, could not lawfully acquire it by force. If they should venture on such a course, they would expose themselves to such a proceeding as this for the purpose of depriving them of the advantage gained by violence and replacing the parties. The question of title is not to be tried.

2. The lease to the plaintiffs was properly given in evidence for the purpose of showing the extent of the possession acquired by the plaintiff's entry upon the premises; that is to say, to show that the possession extended to the boundaries of the land described as granted by the lease.

3. It is contended also that the possession accorded by the lease was not such as would entitle one to have this statutory remedy. It is claimed that Mann was the party actually in possession, and, if their entry was unlawful, he alone could complain. This contention proceeds upon an erroneous assumption. If the plaintiffs entered under their lease, their possession was superior to that of Mann, for by its terms his possession was to be subordinate to the right of possession given to his lessees. The possession taken thereunder would, we think, be sufficient to protect the plaintiffs against a violent dispossession, and entitle them to the remedy provided by this statute.

4. From these conclusions the case is narrowed to the question whether the court was right in taking the view that the evidence left no fair room for doubt as to whether the defendants intruded upon the possession of the plaintiffs by violence. The proof was that the agents of the plaintiffs had, for several days before the difficulty occurred, been digging and prospecting upon the land, and were upon it at the time when the defendants' party entered, and protested against the

entry of the defendants. High words followed. The defendants persisted, and threatened violence to gain their point. No blows were struck, but they were threatened. Calmer counsels, however, prevailed. The plaintiffs' agents gave way, asserting that legal steps would be taken to obtain a remedy. There were some disputes in the evidence in respect to the minor particulars of the transaction. But there was none as to the substantial facts that the defendants entered with a show of force, and that the plaintiffs opposed it as far as they could without engaging in a combat. They were not required to go to that extremity in order to lay the ground for complaint under the statute. The object of the law was to prevent strife, and it would be inconsistent with its purpose to require that the injured party should have resisted to the point of a physical struggle. The statute defines a forcible entry as "an entry without the consent of the person having the actual possession." Civ. Code Ky. 1900, § 452. Upon that interpretation of the law a verdict finding that the defendants' entry was not forcible would have been absurd. We think the court did not err in holding that a forcible entry was proved beyond fair doubt.

There are no other questions of sufficient importance to require separate discussion.

The judgment must be affirmed, with costs.